NEIL M. MCKIRDY, ADMINISTRATOR (ESTATE OF NEIL J. MCKIRDY) *v.* PETER J. CASCIO ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

.Argued October 15, 1954—decided January 25, 1955

*J. Ronald Regnier,* with whom were *Martin E. Gormley* and *William R. Moller,* for the appellants (defendants).

*William S. Gordon, Jr.,* with whom were *George Muir* and *Mary C. Fitzgerald,* for the appellee (plaintiff).

O'Sullivan, J. The plaintiff administrator brought this action to recover damages for the death of his decedent. The death occurred as the result of injuries sustained by the decedent while riding as a passenger in an automobile owned by the named defendant and operated by his son, the defendant Joseph Cascio. The jury returned a verdict for the plaintiff to recover $50,000, and from the judgment rendered thereon both defendants have appealed.

We first discuss the assignment that the court erred in refusing to set the verdict aside on the ground

that it was against the evidence. The jury could reasonably have found the following facts: At about 11:30 p.m. on June 18, 1952, Joseph Cascio, a high school boy, was operating his father's automobile on Deercliff Road in the town of Avon. Just before the accident occurred, Joseph was driving at a speed of between twenty and thirty miles an hour. A girl in her teens was sitting beside him, and the plaintiff's decedent and another young girl were occupying the rear seat. As the automobile was proceeding along a stretch where the road was winding and narrow, the driver turned his head to speak to those behind him. When he again looked ahead, he saw that the automobile was off the traveled portion of the highway. He immediately applied the brakes but was unable to stop the car before it crashed into a utility pole at the side of the road. As a result of the impact, the decedent was catapulted forward and his head went through the windshield. His jugular vein was severed by the glass and, because of the loss of blood, he died within the hour.

This narrative of facts readily supports a verdict against both defendants. The negligence of the driver was established by proof of the manner in which he continued to operate the automobile during the night season over a narrow, winding road while, at the same time, he turned to talk to those on the back seat; and the liability of Joseph's father would, under the foregoing facts, naturally follow upon the unrebutted presumption that the automobile was being operated as a family car. General Statutes § 7904.

The defendants also contend that the damages awarded by the jury were excessive and that, on this ground, the court erred in denying their motion to set the verdict aside. The jury could reasonably

have found the following: The decedent was eighteen years old. His life expectancy was almost forty-nine years. He enjoyed good health and was of attractive appearance. He had some musical talent and was accustomed to entertain on the piano at social gatherings. He had just completed his high school course and, had he lived, would have graduated a few days later. He had planned to continue his education and had been accepted for matriculation at a college in Rhode Island. The decedent's father was part owner of a lithographing firm employing about twenty-five persons. During the summers of 1950 and 1951, the decedent worked in the firm's bindery and shipping departments. His earnings in 1950 were $458 and in 1951, $465. If he had decided to go to work rather than to college, a job at the firm would have been available to him at 85 cents an hour.

The defendants have urged upon us the necessity for a modification of our concept of the law as it deals with an action for wrongful death. Their purpose is to change the rule for the ascertainment of damages. They seek the adoption of a rule which would make damages contingent on, and fix them in proportion to, the financial dependency of others upon the deceased. This effort, however, is abortive. In the first place, the existing legal principles on this subject matter are the law of the case, since the defendants did not challenge them during the course of trial. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547. Ordinarily this court will refuse to entertain a question not distinctly raised below. *New England General Contracting Co.* v. *Brennan Stone Co.,* 119 Conn. 296, 297, 175 A. 921; *Bassett* v. *Mechanics Bank,* 116 Conn. 730, 731, 166 A. 385; Practice Book § 409. But this aside,

any change in the law is presently unwarranted, at least by judicial decision. On the contrary, we reaffirm what we have frequently and consistently said in the past, that is, that our statute is not a Lord Campbell's Act. The right of recovery for death is as for one of the consequences of the wrong inflicted upon the decedent, and the damages are not based upon any loss occasioned his family or relatives. *Chase* v. *Fitzgerald,* 132 Conn. 461, 467, 45 A.2d 789; *Shaker* v. *Shaker,* 129 Conn. 518, 520, 29 A.2d 765; *Davis* v. *Margolis,* 108 Conn. 645, 648, 144 A. 665; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 529, 131 A. 501; *Mezzi* v. *Taylor,* 99 Conn. 1, 7, 120 A. 871; *Kling* v. *Torello,* 87 Conn. 301, 305, 87 A. 987; *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 623, 45 A. 435; *McElligott* v. *Randolph,* 61 Conn. 157, 159, 22 A. 1094; *Goodsell* v. *Hartford & N.H.R. Co.,* 33 Conn. 51, 56.

The task of fixing the amount of an award in death actions is far from easy, nor was it lightened in 1951 by the legislative removal of the ceiling which had previously limited the maximum of such awards. Cum. Sup. 1951, § 1392b (Cum. Sup. 1953, § 2428c). Many of the factors upon which our rule for the assessment of damages rests are, at best, rather indefinite and speculative in nature. "What the intestate's length of days would have been but for the mishap which befell him, or what his state of health or earning ability, cannot be known. Therefore the problem of estimating damages for the loss of his life with any exactness is, as in every such case . . . one beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment." *Lane* v. *United Electric Light & Water*

*Co.,* 90 Conn. 35, 37, 96 A. 155. For this reason we have frequently said that the amount of damages recoverable in actions for death is peculiarly within the province of the jury. *White* v. *L. Bernstein & Sons, Inc.,* 123 Conn. 300, 302, 194 A. 723; *Ratushny* v. *Punch,* 106 Conn. 329, 337, 138 A. 220; *O'Connor* v. *Zavaritis,* 95 Conn. 111, 117, 110 A. 878. Their determination will be set aside, however, when it appears that the sum awarded is plainly excessive. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 78, 111 A.2d 547; *Szivos* v. *Leonard,* 113 Conn. 522, 525, 155 A. 637; *Knight* v. *Continental Automobile Mfg. Co.,* 82 Conn. 291, 293, 73 A. 751.

Although the verdict is a generous one, we cannot hold that it is excessive. The jury were confronted with the problem of determining just damages for the death of a mere boy. He had not as yet reached the threshold of adult life. Many of the factors which, if he had been of mature age, are to be considered in an attempt to fix the economic loss to his estate could not be placed in evidence. These factors include, among others, such matters, for example, as actual earnings throughout an entire year or years in the past and the average of such earnings over the period when he was employed, together with his proven abilities and capabilities, and his capacity to save, with all the probabilities of the future indicated by the events of the past. *Gorham* v. *Cohen,* 102 Conn. 567, 570, 129 A. 523. This does not mean that the economic loss suffered by the estate of a decedent through the wrongful destruction of his earning capacity by death is a sum reached by multiplying his annual average of earnings by the number of years which he might be expected to live. *Ratushny* v. *Punch,* 106 Conn. 329, 337, 138 A. 220. A wage earner or a salaried man

is subject to the expense of maintaining himself. The factor to be considered, therefore, is his net and not his gross wages or salary, that is, what remains from his wages or salary after deducting the cost of his own personal maintenance. In the case at bar there was evidence that in appearance, health, background, education and availability of employment, he had opportunities to live a more profitable and pleasurable life than would the average individual. His untimely death deprived him of an opportunity to take his place in the community, to marry and to rear a family. It deprived him of his future earnings by destroying his net earning power, and while such earning power is difficult to evaluate, the evidence which was available to the jury on this score was ample to support a substantial amount therefor.

The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589; *Slabinski* v. *Dix,* 138 Conn. 625, 629, 88 A.2d 115. The verdict in the case at bar meets this test.

The defendants assign error in the charge as delivered and in the court's failure to charge as requested. They had offered evidence to prove and claimed that they had proved the following facts: About 10 o'clock on the evening in question, Joseph parked the automobile in a private driveway leading from Deercliff Road. The four occupants then began to drink bottled beer which the decedent had bought at a package store before the two girls were

picked up. Some of the beer was poured on the ground and some of the bottles were thrown away with part of the contents still contained therein. All told, there were eighteen bottles thus disposed of. Just before leaving the driveway about 11:30 p.m., the decedent asked Joseph whether he felt able to drive. After a short discussion on this subject, Joseph started the motor and drove his three passengers away.

The instructions which are the subject of attack and the requests to charge which the defendants had filed dealt with the defenses of contributory negligence and assumption of risk. To be sure, the court did not charge on these defenses in the language of the requests. That, however, was unnecessary. *Ziskin* v. *Confietto,* 137 Conn. 629, 632, 79 A.2d 816; *Hoffberg* v. *Epstein,* 130 Conn. 613, 615, 36 A.2d 388; Maltbie, Conn. App. Proc., § 66. The court did charge adequately on both. Its duty was amply performed since its instructions gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. *Boland* v. *Vanderbilt,* 140 Conn. 520, 522, 102 A.2d 362; *Doe* v. *Saracyn Corporation,* 138 Conn. 69, 75, 82 A.2d 811; *Shuchat* v. *Stratford,* 125 Conn. 566, 569, 7 A.2d 387.

At one point in its charge the court stated that the defendants would be entitled to a verdict if the jury found that both defenses had been established. This thoughtless misstatement was in direct conflict with an accurate instruction given elsewhere in the charge. A charge must be read as a whole, and an inaccurate statement culled from it will not be regarded as reversible error unless it is reasonably

probable that the jury were misled by it. *McMahon v. Bryant Electric Co.*, 121 Conn. 397, 406, 185 A. 181; *Foote v. Brown*, 81 Conn. 218, 226, 70 A. 699; *Amato v. Desenti*, 117 Conn. 612, 617, 169 A. 611; *Ghent v. Stevens*, 114 Conn. 415, 419, 159 A. 94; Maltbie, Conn. App. Proc., § 49. We are satisfied that, after hearing the charge as a whole, the jury did not obtain an erroneous impression of the law. *Jacobs v. Swift & Co.*, 141 Conn. 276, 280, 105 A.2d 658.

The remaining assignments of error, addressed to rulings on evidence, are entirely without merit and warrant no discussion.

There is no error.

In this opinion the other judges concurred.