ELIZABETH PATTEE *v*. JOSEPH H. WALTER

CIRCUIT COURT                    NINTH CIRCUIT
                        FILE No. CV 9-6612-3790

Memorandum filed May 20, 1968

*Peter W. Gillies,* of Middletown, for the plaintiff.

*Samuel N. Allen,* of Middletown, for the defendant.

KOSICKI, J.  The plaintiff, a licensed real estate broker, sued the defendant for a real estate commission arising from the plaintiff's alleged participation in obtaining a buyer for property owned by the defendant and sold to M. Gilbert Burford.  For a correct understanding of the facts in issue, a brief account of the events preceding the disputed agency and sale is essential.

It is undisputed that the defendant is an architect, builder and real estate developer in the town of Haddam. In January, 1966, Richard O'Brien, who was president of the corporation operating station WCNX and was on terms of close friendship with Burford and his wife, drove them to the defendant's real estate development in Haddam. The Burfords intended to purchase a home for themselves, and O'Brien suggested that they look over some of the properties being offered for sale by the defendant. One of the homes in which Burford expressed interest was then being leased by Scanlon. The plaintiff had been instrumental in obtaining this lessee for the defendant. She had no other listings of homes being offered for sale by the defendant.

A short time later, Burford and O'Brien went back to look at some of the properties of the defendant. Burford liked the Scanlon home, but the building appeared inadequate for his needs. He also made known to the defendant that the purchase price should not exceed $35,000. The defendant agreed to submit plans for enlarging and rearranging the space in the Scanlon house, and Mrs. Laverty, who was a licensed real estate agent employed by the defendant, took the plans to Burford. Because of the defendant's estimates of the costs of alterations, it was considered impracticable to proceed further, and all negotiations concerning the Scanlon house were terminated. Burford did not at any time revive his interest in purchasing that particular property.

After the decision not to purchase was made, Mrs. Laverty showed Burford other properties, not belonging to the defendant, but no sale or purchase resulted. Meanwhile, Burford visited the defendant to look over some other properties and was shown a lot, one of two remaining in that tract, which was

available for sale. Burford expressed sufficient interest in it so that, by agreement, the defendant drew architectural sketches for a house he proposed to build for the Burfords for $35,000, including the lot, valued at $4200, if the Burfords agreed to purchase. These plans were delivered by the defendant to the Burfords personally. There never was a listing agreement of the property with the plaintiff, and at the time the plaintiff claims she had procured the Burfords as purchasers ready, able and willing to buy on terms acceptable to the parties there was no house in existence and plans for it were still under discussion. Neither the plaintiff nor Mrs. Laverty were consulted about or had access to the plans or the construction or proposed construction of the house. All negotiations were between the defendant and the Burfords.

After the house was completed, with such alterations as were agreed on by the parties, the defendant's attorney drew a contract of sale which both parties executed. Because of the increased costs caused by changes in plans, the contract price was $36,800. The plaintiff claimed a brokerage commission of 6 percent on the entire amount of the purchase price which, by arithmetical calculation, would amount to $2208. Concededly, there was no exclusive agency involved in the sale, and the plaintiff had no listing of the property.[1]

Apparently, the only ground on which the plaintiff claims to be entitled to a commission is that she had procured the purchasers who ultimately bought

[1] "The plaintiff, as a real estate broker, was subject to the rules and regulations of the state insurance department, of which our courts may take judicial notice. *Roden* v. *Connecticut Co.*, 113 Conn. 408, 416. These require, among other things, that a listing agreement shall have affixed thereto the signature of all the parties concerned. Conn. Dept. Regs. § 20-328-1." *Grillo* v. *Howe*, 4 Conn. Cir. Ct. 649, 653.

the house. Much reliance is placed upon a paragraph of the complaint, admitted by the defendant, in which it is recited that "no broker other than Betty Pattee was instrumental in bringing about the sale of these premises and that the commission due her was to be paid by the builder." The very next paragraph, alleging that the value of the plaintiff's services to the defendant is $2208, has been denied by the defendant. The allegation that the defendant has at all times refused to pay said sum is unqualifiedly admitted.

It appears from the evidence that after the sale in question a heated dispute arose between the parties in which the defendant denied any agency agreement for the sale of the Burford property but offered, by way of gift or concession, a 10 percent commission on the sale of the lot. A check for $420 sent by him to the plaintiff was not cashed but was retained. Because of this refusal, the issue of any consideration for such payment is not before the court. Nor do we find any merit to the claimed admission of liability by the defendant as noted above. The significant word in the quoted allegation is "due." It was the plaintiff's burden to prove that the claimed commission was due. "An agreement without consideration is a mere indulgence and unenforceable." *State ex rel. McClure* v. *Northrop,* 93 Conn. 558, 566.

A broker is entitled to his commission when he has produced a customer ready, able and willing to purchase upon terms prescribed or accepted by the seller. *Martino* v. *Palladino,* 143 Conn. 547, 548; *Meagher* v. *Reeney,* 96 Conn. 116, 117; *Dworski* v. *Lowe,* 88 Conn. 555, 558. It is concluded upon the evidence that the plaintiff was not authorized by the defendant to act as a real estate broker for the defendant in connection with the negotiations lead-

ing to the purchase of the land bought and the house ultimately constructed by the defendant for Burford.

Neither the facts in evidence nor any authority cited by the plaintiff support the demand of the plaintiff. She has failed to prove that any agency existed for the alleged sale. The defendant was free to deal independently with a customer who was shown another property, the sale of which he effected himself. We reject the claim that because "the agency" conferred on the plaintiff was never revoked by the defendant, it continued without further express or implied authority ad infinitum and barred the defendant, as principal and owner, from selling other property of his to the Burfords. As noted above, there was no exclusive agency. Furthermore, the undisputed evidence shows that the plaintiff had not at any time sold any property belonging to the defendant. After the failure to sell the Scanlon house, she did not produce a buyer for the property the Burfords bought and the house eventually constructed on it. It is not enough that the identities of the prospective and final buyers were the same. The properties were not the same, and the plaintiff has failed to prove that she was the cause for procuring the final sale.

"A real-estate broker is, generally speaking, a special agent with limited powers and is, therefore, in dealing with land, closely restricted within the terms of his agency. . . . He must keep within the bounds of the authority conferred upon him, otherwise the principal will not be bound. . . . In determining the extent of his authority, his contract will be strictly construed and any doubts will be resolved against him." 12 Am. Jur. 2d 821, Brokers, § 66.

Judgment may enter for the defendant.