STATE OF CONNECTICUT *v.* JOHNNIE TYSON
(AC 23365)

Foti, DiPentima and Freedman, Js.

Argued October 12—officially released December 28, 2004

*Jennifer Bourn,* certified legal intern, with whom were *Timothy H. Everett,* special public defender, and, on the brief, *Anthony Costanza, Raj Saker, Susan Evans, Joseph Russell* and *Shaina Spreng,* certified legal interns, for the appellant (defendant).

*Robert J. Scheinblum,* assistant state's attorney, with whom, on the brief, were *Christopher L. Morano,* chief

state's attorney, and *Richard L. Palombo, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Johnnie Tyson, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1), of two counts of interfering with an officer in violation of General Statutes § 53a-167a (a) and of being a persistent serious felony offender in violation of General Statutes § 53a-40 (c). He claims that (1) the trial court improperly substituted an alternate juror for a member of the original panel after it had reached a verdict, (2) the court failed to take adequate steps to ensure that the reconstituted jury was able to commence deliberations anew, (3) the court abused its discretion in conducting a posttrial inquiry into juror misconduct by questioning the two jurors charged with misconduct without placing them under oath and (4) his conviction for both assault of public safety personnel and interfering with an officer constitutes double jeopardy. We affirm in part and reverse in part the judgment of the trial court.

The relevant facts are as follows. On February 8, 2001, the defendant, while resisting arrest, struck a New Haven police officer in the face. The defendant thereafter was charged with one count of assault of public safety personnel in violation of § 53a-167c (a) (1) and two counts of interfering with an officer in violation of § 53a-167a (a). In a part B information, he was charged with being a persistent serious felony offender in violation of § 53a-40 (c).

The matter was tried to a jury, which began its deliberations on March 19, 2002. The following day, defense counsel brought an allegation of juror misconduct to

the court's attention.[1] While discussing that allegation with counsel for the defendant and the state in chambers, the court received a note from the jury. Acknowledging a "probable verdict," the court nonetheless indicated that it "[had not] looked at the [note]" and that it "[did not] know what the verdict [was]." The note was neither read into the record nor marked as an exhibit.

The court then held a hearing on the alleged juror misconduct. After questioning the complicit juror, as well as the other jurors, the court found that the alleged misconduct had no effect on the other five jurors. The court then considered how to proceed. Noting that it was statutorily empowered to replace the sitting juror with an alternate, the court asked defense counsel to comment. Defense counsel responded that such substitution was "acceptable to the defense." After the prosecutor argued that such action was unnecessary, defense counsel insisted that the defendant's right to an impartial jury had been jeopardized and that, "in lieu of the mistrial," the juror should be replaced.

Agreeing, the court excused the complicit juror and replaced him with an alternate. It then informed the five original jurors of this development and instructed: "The most important part of all of this is that by the statute—and please bear with us on this but this is the way it has to be done—is that your deliberations have to commence from the beginning, okay, and take each part of it and go through everything just as you did from the beginning." The reconstituted jury retired to deliberate; soon thereafter, it reached a verdict of guilty on all three counts. The court accepted the verdict and excused the jury.

Days later, the defendant filed a motion for a new trial premised on a separate allegation of juror miscon-

---

[1] During a recess, juror R allegedly discussed the jury's deliberations with the defendant's brother.

duct. It alleged that, prior to one of them joining the jury, two alternate jurors had discussed the case with each other in the hallway while the original jury was deliberating. In response, the court conducted an inquiry into that allegation. The court heard testimony from, among others, the two alternate jurors. Neither was placed under oath. Crediting their testimony, the court concluded that no juror misconduct had occurred. Accordingly, on May 24, 2002, it denied the motion for a new trial.

On June 26, 2002, after waiving his right to a jury trial, the defendant was tried on the part B information. The court found the defendant to be a persistent serious felony offender and sentenced him to a total effective term of thirteen years imprisonment and five years of special parole. This appeal followed.

I

The defendant claims that the court improperly substituted an alternate juror after the original panel had reached a verdict, in contravention of General Statutes § 54-82h (c).[2] His claim is unavailing.

First, we note that there is no definitive evidence in the record indicating that the jury had indeed reached a verdict. Although a note was passed to the court on March 20, 2002, it was not read. Moreover, that note was not marked as an exhibit. The court stated that it

[2] General Statutes § 54-82h (c) provides in relevant part: "If, at any time, any juror shall, for any reason, become unable to further perform the duty of a juror, the court may excuse such juror and, if any juror is so excused or dies, the court may order that an alternate juror who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial or deliberation shall then proceed with appropriate instructions from the court as though such juror had been a member of the regular panel from the time when the trial or deliberation began. If the alternate juror becomes a member of the regular panel after deliberations began, the jury shall be instructed by the court that deliberations by the jury shall begin anew. . . ."

did not know its contents. Furthermore, it is undisputed that the alleged verdict never was accepted by the court. Indeed, defense counsel specifically requested the substitution of an alternate juror "before the verdict is either read in open court or accepted . . . ." Put simply, the record is devoid of evidence indicating that the original jury had reached a verdict, as the defendant maintains.

Irrespective of the question of whether the original jury had reached a verdict, we conclude that the defendant waived the right to object to the juror substitution in this instance. "Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 445–46, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

During the March 20, 2002 hearing on juror misconduct, the defendant initially made an oral motion for a mistrial, which the court denied. Thereafter, when the court suggested replacement of the juror with an alternate, defense counsel responded that this solution was "acceptable to the defense." Furthermore, in response to the state's argument that such action was unnecessary, defense counsel insisted that the defendant's right to an impartial jury had been jeopardized and that, "in lieu of the mistrial," the juror should be replaced. By so doing, the defendant waived the very claim he now pursues.

As the United States Court of Appeals for the Seventh Circuit has asked, "If the defendant would prefer to take his chances with the jury in its reconstituted form rather than undergo the expense and uncertainty of a new trial, why should he not be allowed to?" *United States* v. *Josefik*, 753 F.2d 585, 588 (7th Cir. 1985), cert. denied, 471 U.S. 1055, 105 S. Ct. 2117, 85 L. Ed. 2d 481 (1985); see also *United States* v. *Cencer*, 90 F.3d 1103, 1106 (6th Cir. 1996) ("[I]t is evident that [the defendant] affirmatively agreed to the substitution procedure, including the presence of the alternates during early deliberations. As a result, his attempt to challenge that procedure on appeal seems questionable at best, disingenuous at worst."). Likewise, Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim. See, e.g., *State* v. *Barile*, 267 Conn. 576, 579–80, 839 A.2d 1281 (2004).

By agreeing to the substitution of the alternate juror, the defendant waived the claim he now asserts on appeal. Accordingly, that claim must fail.

## II

The defendant claims that the court failed to take adequate steps to ensure that the reconstituted jury was able to commence deliberations anew. He specifically argues that the instructions provided by the court were wholly inadequate. The defendant did not preserve this claim before the trial court and now asks us to exercise our supervisory powers to announce mandatory procedures in juror substitution cases. We decline his invitation.

Our Supreme Court has held that a violation of § 54-82h (c) does not implicate the defendant's constitutional rights. See *State* v. *LaBrec*, 270 Conn. 548, 557–58, 854 A.2d 1 (2004); *State* v. *Williams*, 231 Conn. 235,

244, 645 A.2d 999 (1994). When reviewing claims of instructional impropriety in appeals not involving a constitutional question, we "must consider the whole charge and it must be determined . . . if it is reasonably probable that the jury [was] misled . . . ." (Internal quotation marks omitted.) *Pajor* v. *Wallingford,* 47 Conn. App. 365, 377, 704 A.2d 247 (1997), cert. denied, 244 Conn. 917, 714 A.2d 7 (1998).

It is improbable that the jury was misled by the court's instructions in the present case. After selecting an alternate juror, the court instructed: "Now, what I'm going to do is to have the jurors come out, the remaining jurors, inform them of the absence of one of their numbers and indicate that you have now taken that juror's place and that they are to recommence deliberations, but those deliberations by our statute are to start from the beginning again. So that you are a part of everything." The court then addressed the reconstituted jury and provided the following instruction: "The most important part of all of this is that by the statute—and please bear with us on this but this is the way it has to be done—is that your deliberations have to commence from the beginning, okay, and take each part of it and go through everything just as you did from the beginning." These instructions sufficiently apprised the jury that it was to begin its deliberations anew, as required by § 54-82h (c).

"Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Emphasis in original; internal quotation marks omitted.) *State* v. *Hines,* 243

Conn. 796, 815, 709 A.2d 522 (1998). The defendant's claim does not present such a circumstance.

## III

The defendant next claims that the court abused its discretion in conducting a posttrial inquiry into juror misconduct by questioning the two jurors charged with misconduct without placing them under oath. The defendant did not raise this objection before the trial court and now seeks plain error review.[3]

A similar claim was presented to, and rejected by, our Supreme Court in *State* v. *Paolella*, 211 Conn. 672, 561 A.2d 111 (1989). As the court explained: "Even if . . . no oath had been administered, we note that the defendant failed to object to [the] testimony on these grounds at trial. In *Bassett* v. *Mechanics Bank of New Haven*, 116 Conn. 730, 166 A. 385 (1933), we concluded that where the defendants had failed to object at trial to the testimony of a witness who had not been sworn they could not raise the issue on appeal. In so holding, we stated, counsel must have known [that unsworn testimony was being received by the court] and if they wished to raise any objection based upon it they should have called it to the attention of the trial court at the time, when any defect of this nature could have been remedied; not having done so they waived any such defect. . . . Accordingly, by failing to object to [the] allegedly unsworn testimony at trial, the defendant has waived his right to raise the issue on appeal." (Citations omitted; internal quotation marks omitted.) Id., 687–88.

"Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error

---

[3] Pursuant to Practice Book § 60-5, "[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court."

is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Toccaline*, 258 Conn. 542, 552–53, 783 A.2d 450 (2001). The defendant presents no persuasive reason why his failure to object should not be deemed a waiver, nor why the court's consideration of unsworn testimony resulted in manifest injustice. Therefore, plain error review is unwarranted in this instance.

## IV

The defendant's final claim is that his conviction for both assault of public safety personnel and interfering with an officer with respect to the same incident constitutes double jeopardy. In *State* v. *Porter*, 76 Conn. App. 477, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003), we held that interfering with an officer is a lesser offense included in the greater offense of assault of public safety personnel, and, thus, conviction for both offenses for the same act constituted a double jeopardy violation. Id., 485–86. The state concedes that *Porter* is controlling. We agree. Accordingly, the defendant's conviction on count three of interfering with an officer must be combined with his conviction of assault of public safety personnel, and his sentence on count three for interfering with an officer must be vacated.

The judgment is reversed in part and the case is remanded with direction to combine the conviction on count three of interfering with an officer with the conviction of assault of public safety personnel, and to vacate the sentence on count three for interfering with an officer. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.